Thank you, Judge Watford. And may it please the Court, my name is Mark Caldwell. I'm representing Mr. Sanchez this morning in this Equal Access to Justice Act case. I would like to reserve two minutes of my time for rebuttal, and I will keep track of my own time in that regard. I need to begin by correcting something that was true when I wrote it in the opening brief, but has now changed. In the opening brief, I point out that Mr. Sanchez has a stake in the Equal Access to Justice Act fees because of the offset between the past due benefits fees and the Equal Access to Justice Act fees. That's no longer true. Things have changed. After the remand, he was granted benefits on the theory that we advanced the listing of impairments, and the benefits have been paid, and the past due benefits of 25 percent did equal the administrative fee, so that's eaten up all of that. So I suppose I'm here representing myself in that regard now. That said, though, what is really important about these cases is, at least in my experience, 95 percent of the time, the Equal Access to Justice Act fee goes back to the claimant. So when I'm doing these Equal Access to Justice Act cases, what I'm really doing is I'm advocating for the client to pay less money from the past due benefits, and I think that's a really important aspect of these cases that should be kept in mind. We're not here mostly, in most cases, to talk about how much an attorney is going to make. We are here to talk about how much a claimant is going to have to pay from wrongfully withheld past due benefits, and that is, I think, a very important distinction to make here. So moving on to the merits of this case, there are really two aspects of this case. One is the district court's articulation or failure of articulation for the reasons finding the government's position to be substantially justified, and then the second part of the case is the determination of substantial justification itself. Well, just on the first part, I mean, we can look at the government's opposition. It's not like we have uncertainty as to the basis on which the district court ruled. You have a challenge to whether that is a legitimate basis. But we can figure out, I think, what the district court had in mind, can't we? Respectfully, I don't think you can, and here's why. The district court said what they said in pertinent part. What part? Did the district court agree with every single argument? Did they agree with just one argument? There's no way for this Court to know of the various arguments that the Commissioner put forth, and most of them, as you know, were harmless error arguments, whether the Court agreed with all of them or not. I'll pick one example. The Commissioner argued that Dr. Keller's opinion should be this harmless error to fail to give reasons for rejecting his opinion because it was made in connection with a workers' compensation case. I've gone over and over and over this record, and if I'm wrong, I'll apologize, but I can't find any indication whatsoever that that physician made that statement in regard to a workers' compensation case. Now, how can I – how can we know whether that was something that the district court latched on to? If the district court thought that was important, that's one thing. If the district court didn't think that was important, then that's something else altogether. That gets really down to the heart of the harmless error argument. So I don't think that this Court can just say, well, for whatever reasons the Commissioner put forward, and they put forward five or six, which one of those are the ones that the district court thought were determinative of this case. Without that knowledge, this Court cannot make a reasoned review of the district court decision, because this Court just can't know what arguments the district court thought were persuasive and what arguments the district court thought were not persuasive. Is it your position that there are certain issues as to which there could not have been substantial justification as a matter of law? Yes. I think the entire set of arguments that were based upon harmless error, which was really the fallback position of the Commissioner in argument after argument, was wrong because the district court didn't say that those were harmless errors. The district court, as a matter of fact, said, well, this is so important that this matter must be reheard. Again, just let me pick one. The listing of impairments for this gentleman's weight-bearing joint problem. The district court said that the ALJ erred by not articulating anything in regard to that listing other than merely mentioning it. Now, if a person meets or equals the criteria for the listing of impairments, which was, in fact, the finding that happened when this case was remanded, then that person is presumptively disabled, end of discussion. If that's the case, how can that possibly be harmless error? It is determinative of the case. It's step three of the sequential evaluation process. If an individual prevails on that issue, the case stops there. It never goes to discussion of past relevant work or whether there's other work, the medical vocational guidelines, vocational expert testimony. All of that goes away, and the case is done. I'm not sure we're supposed to peek under the tent, but are you saying that when it was remanded that it was found to have met the list? That's what happened on remand? Yes. I'm a little hesitant about whether you can peek under the tent, too. But I think it was important for me to tell you at the beginning of my argument that the case had been resolved in Mr. Sanchez's favor because it really corrected a misstatement in my brief, and I just didn't feel I could let that misstatement stay there and let you be ignorant of the fact that that just wasn't the case anymore. But whether he had succeeded on that point is incidental. The fact of the matter is that determination is absolutely determinative of a claimant's impairment or a claimant's case. And so that being the situation, it cannot possibly be harmless error to fail to even consider that issue, and that's the point, Judge Lynn. It's consideration of the issue, not necessarily the resolution of the issue. It happened to be resolved in his favor, but that's not the point regarding harmless error. The point regarding harmless error is that the agency gave an extremely cursory look at that, really just mentioned the number of the listing and moved on. And that's where the Court said this is something that needs to be looked at. It is, in my respectful view, impossible to consider something harmless error when it is outcome determinative of the case. Well, let me stop you there, because I guess I'm a little confused as to why you're even spending time arguing this harmless error point. I thought the more fundamental defect with the district court's ruling was that when it incorporated by reference, if we want to call it that, the government's opposition to your fees motion, all the government argued was harmless error, when, in fact, what they needed to do in addition was to justify the ALJ's initial ruling. And that's what I said in my brief. Right. That's why I – that seemed persuasive to me, and that now I would have expected I'm responding to Judge Lynn's question, I think, and that's what I meant to do. But I agree with your emphasis on that issue. I believe that the more fundamental error was the prior error, that there was not a defense of that particular error. And that's why, I guess, I started out saying, I think I know what the district court had in mind. It relied solely on this harmless error defense, but it – and so I think you're in a good position there to say, good, yeah, that's – we'll take that, because the government never tried to argue the more fundamental issue which they had to prevail on. I like what you just said, and I'm going to stop there. I'll reserve the remainder of my time for rebuttal, if I may. Okay. Maybe you can – I'm sorry. You should give your introduction. Good morning. May it please the Court. My name is Alexis Wray. I represent the Commissioner in this matter. And you were the one who filed the opposition, right? Correct, Your Honor. And am I – I read it. And am I wrong in thinking that all you argued was that each of the errors the district court had identified on the first go-round just were harmless? I mean, I think what we argued was there was support in the record for all of the ALJ's findings. I just don't remember you making any attempt to defend the ALJ's initial ruling. All I read was, well, our position now, trying to defend that on appeal, was justified, because, in fact, we think all of those errors could have been found harmless. I mean, I think on the merits, we framed that issue, I mean, based on the same evidence as the reasons why this lack of articulation didn't result in a different outcome. So just because the ALJ actually did consider this listing 1.02a, and to the extent he didn't articulate it there, there was evidence in the record, which the ALJ considered, and in other parts of the decision, the evidence he discussed, which made that lack of articulation to the extent it was error, it made it harmless error. Well, but, I mean, a harmless error argument, by definition, starts from the premise that there was error. And it seems to me you had to defend the ALJ's initial erroneous rulings as being substantially justified, and that's what I guess I thought was lacking in your opinion. I mean, my recollection of the merits arguments were that we argued this was sufficient, and if it wasn't, then in the alternative, that it was harmless. But in any event, the argument was there was record evidence to support the ALJ's conclusions, and, you know, this lack of articulation or remand for articulation wouldn't change the outcome. Maybe you can just show me. Your opposition wasn't that long. I mean, maybe you can just point me to where you think you made a defense of the ALJ's initial ruling. You mean in our substantial justification? In your opposition to the fees motion. That's all that you have to rely on, because the district court didn't give us any other explanation for why. Okay. I don't know the exact place. I mean, that was my recollection of it. If I could just kind of address harmless error in general, I'd be happy to do that. Well, I mean, I'm looking at your opposition. It's about a five or six-page document. Right. All I saw in there was, you know, we were justified in trying to defend the ALJ's on appeal, because each of the errors that you, the district court, found could have been deemed harmless. Right. I mean, I think we kind of framed it all as one issue, as in we were substantially justified. And I agree with you that there are two parts to that. Okay. But let me just make sure I'm right on the law. In order to prevail on the substantial justification point, you have to show not only that you were your position on appeal was substantially justified, but that the ALJ's initial ruling. The underlying action. Yes. Definitely, that's correct. Okay. Is there somewhere you want to direct us in your opposition, then, when you made that, the defense of the ALJ's initial ruling? I mean, I don't have a specific site. I mean, I think I kind of framed it as one overarching issue, being we were reasonable in the entire Commissioner's position. I don't have a specific site. Okay. I mean, but even just accepting the harmless error portion of that, I mean, there's no basis in the statutory language or the case law that specifies that, you know, arguing harmless error is equals a lack of substantial justification. And in doing so, we kind of tie the government's hand in defending, you know, some of these cases that are not perfect because of, you know, limited resources. And in fact, you know, there are cases that say that the government is can be substantially justified even when there's harmless error, and there are even more cases where harmless error has been upheld and the Commissioner's decision affirmed where there has been a harmless error. So to say harmless error, arguing that in and of itself equates to a lack of substantial justification doesn't seem to me. I'm just saying that's only half the equation, though, and it seems to me you never addressed the first half. Like I said, I think I framed it as, like, when I was writing it as a big picture, the ALJ had support in the record, and here's all the support in the record. His decision itself wasn't unreasonable because there was support in the record for it. Just maybe remind me what the three errors are. There are three errors that the district court found in the ALJ's ruling. Sure. So with regard to listing 1.02a, the ALJ actually explicitly considered that listing and found that the claimant did not meet it. And I thought the error was a failure to explain why. There was a lack of articulation in that section of the ALJ's decision. Our cases explicitly require an explanation, and so what's the substantial justification for the ALJ failure? I mean, I think the substantial justification is that there was evidence in the record. A lot of it actually discussed by the ALJ in another part of the decision that did support that finding. It wouldn't have changed the outcome for him to explain it in that section. For instance, a lot of the evidence that supported the lack of meeting listing 1.02a was the claimant's lack of an inability to ambulate effectively as defined in the regulations. And a lot of the evidence that supported that finding were these doctors' opinions, Dr. Norman's opinion, Dr. Cunningham's opinion. And the ALJ, while he didn't discuss them under that listing, discussed them later in the decision generally when he was assessing the RFC. So for instance, Dr. Cunningham found that the claimant could, I think, stand around at least six hours, another doctor said around two. And so under the definition of an inability to ambulate effectively, there's no way he could meet that in light of these doctors' opinions, which the ALJ, I mean, the ALJ considered those opinions later, just not in the listings portion of the assessment. There was also the issue of the claimant's education level. And again, the ALJ actually misstated that when he was making the Step 5 finding. But actually, if we look earlier in the decision, the ALJ actually acknowledged his education level, said he had considered his testimony regarding his inability to read, and as we explained in our brief, there was other evidence indicating that he wasn't, in fact, illiterate. He said he could read and write in English. He said reading was one of his hobbies. And his credentials as far as his history of semi-skilled work and his achievement of eighth grade versus a lower grade actually indicated that he was more consistent with the regulatory definitions of a marginal or a limited education versus being illiterate, which would be the only outcome that would be a determinative thing under the medical vocational guidelines. So I think the limited education talks about a sixth grade or less education, and then the next step up talks about seventh to eleventh grade, and here he had an eighth grade, so he was at least more in the limited to marginal education versus the illiterate. So, and again, he discussed those things. But that's a determinative issue, isn't it? If he is, in fact, illiterate and was 45, which he was, not 44, that puts him in a different grid category, and that can be a dispositive issue. That can be, you are correct. I think our position was, based on the decision and the record that the ALJ considered, a finding of illiteracy was not supported, and it was reasonable for the ALJ to make the findings that he did, even in light of his misstatement later in the decision about the claimant's education level. And I think that was at transcript page 12, where he actually talked about the testimony and the fact that he expressly said he considered the claimant's ability to read. The final issue was Dr. Keller's opinion that wasn't discussed. It came kind of towards the end of the relevant time period, and again, the ALJ did not discuss that explicitly, but there were a number of things in the record that showed that it was not, it would not have changed the outcome for the ALJ to have discussed it, including the fact that he issued that on his first visit with the claimant, and things like that, including, let's see what else we have. Applying some of the factors that the ALJ should consider are medical opinions under N-404-1527. You know, he didn't explain his opinion. Or explain how this, you know, conclusory permanently disabled in light of other treating doctors' opinions, that he had definitely more capabilities, and so he didn't explain that. It was actually inconsistent with his own treatment notes, which showed that the claimant had a normal gait, despite some problems with his knees. And included, he said, I believe Dr. Keller had stated that this was based on a number of impairments, and the claimant himself testified that the only impairment was his knees. So as a whole, our position was that the ALJ's lack of articulation would not have – it would not have changed the outcome of the case had the ALJ articulated these things. And you think that justifies the ALJ's failure to do what he or she was required to do in the first instance? Yes. I think if we can say that the decision is still supported by substantial evidence in the record, the ALJ stated that he considered the record, yes. I'm out of time. Thank you, counsel. Thank you. Very little. Judge Watford, the sites that you were looking for regarding what amounts to two and three of the Commissioner's defense on substantial justification and harmless error is found at excerpts of record beginning at 134. The only other thing I wanted to address was Judge Lynn's comment. We were talking before about the listings being outcome determinative. And, of course, you're absolutely correct. The educational level is also outcome determinative as of age 45. The Commissioner says, well, that was only part of the case. You know, if the man's found disabled as of age 45, he gets benefits ongoing. That's impossible to consider harmless error. But the real point there is not how the ALJ analyzed what he did. The ALJ made an outright false statement of fact. This man has a high school education or more. Wrong. That can't be substantially justified. And if there are no questions, I'd be happy to stop. Roberts. Thank you, counsel. Thank the Court for its time. The case just argued will stand submitted. I appreciate counsel's arguments this morning.
judges: Lynn, Noonan, Watford